**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION**

| | |
|---|---|
| SIGNAL, LLP, | |
|     Plaintiff, | CIVIL ACTION NO. 7:26-cv-95 |
| v. | JURY TRIAL DEMANDED |
| NXP USA, INC., | |
|     Defendant. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

1.    Plaintiff Signal, LLP ("Signal" or "Plaintiff") files this Complaint against Defendant NXP USA, Inc. ("NXP" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

2.    This is a civil action seeking damages and other relief arising out of Defendant's infringement of Plaintiff's United States Patent Nos. 10,944,400 ("'400 Patent"); 8,947,962 ("'962 Patent"); 8,638,637 ("'637 Patent"); 10,056,902 ("'902 Patent"); and 9,570,129 ("'129 Patent") (collectively, the "Asserted Patents").

**BACKGROUND**

3.    Plaintiff Signal owns all right, title, and interest in the Asserted Patents, including the right to recover damages for past, present, and future infringement of the Asserted Patents.

4.    On September 29, 2025, the Asserted Patents were assigned to Signal by Rambus, Inc. ("Rambus"), a leading American semiconductor company.[1]

---

[1] *See*, https://assignmentcenter.uspto.gov/ipas/search/api/v2/public/download/patent/73085/650

5.    In January 2011, Rambus and Freescale Semiconductor ("Freescale"), a leading American semiconductor company, entered into a Patent License Agreement under which Freescale paid royalties to Rambus in exchange for a license to practice certain Rambus patents including the Asserted Patents and patent family members of the Asserted Patents ("Freescale PLA").[2] Freescale renewed and amended the Freescale PLA with Rambus multiple times, including a September 2013 amendment, which was set to run for term until March 31, 2018.[3]

6.    In December 2015, Freescale and NXP Semiconductors N.V. completed a merger of the two companies, which continued operations as NXP Semiconductors[4], a publicly traded company.

7.    In March 2016, NXP and Rambus entered into a fourth amended Patent License Agreement, affirming assignment of the Freescale PLA to NXP but not otherwise altering the term of the Freescale PLA.

8.    Prior to and immediately following the March 2018 expiration of the Freescale PLA, Rambus made repeated good faith attempts to contact Defendant NXP and negotiate renewal of the long-standing license. However, Defendant NXP continued, and continues today, to knowingly practice the Asserted Patents without license.

9.    On or about May 22, 2018, Rambus presented Defendant NXP with a notice of patent infringement titled "Rambus Patents That Cover NXP Products" (the "May 2018 Notice"). The May 2018 Notice specifically identified: (1) a list of "Rambus Memory Controller Patent

---

[2] *See, e.g.*, https://www.design-reuse.com/news/202520329-rambus-and-freescale-sign-patent-license-agreement/

[3] *See, e.g.*, https://investor.rambus.com/press-releases/press-release-details/2013/Rambus-Expands-Agreement-with-Freescale-Semiconductor/default.aspx

[4] *See, e.g.*, https://investors.nxp.com/news-releases/news-release-details/nxp-and-freescale-announce-completion-merger

Families" "That Cover NXP Products," (2) the corresponding infringing "NXP Products," and (3) the Memory Controller "Interface" types used (*e.g.*, "DDR4") by those NXP Products. The May 2018 Notice included direct reference to each of the patent families asserted in this Complaint.

10.    On or about August 31, 2018, Rambus presented a second notice of patent infringement to NXP (the "August 2018 Notice"). The August 2018 Notice additionally included detailed infringement claim charts identifying Defendant NXP's infringement of specific Rambus patents and patent families by specific NXP products, including the Accused Products then-existing.

11.    The May 2018 Notice and August 2018 Notice (collectively, the "2018 Notices") charged Defendant NXP with infringement on an Asserted Patent-by-Asserted Patent, product-by-product, and memory interface-by-memory interface basis, leaving no ambiguity. The 2018 Notices identified specific products, by model number, including the Accused Products (defined below) then-available.

12.    The 2018 Notices identified Rambus patents and patent families, and infringing "NXP Products" categorized by "Memory Controller" "Interface" type (*e.g.*, "DDR4"), thus providing NXP with notice that its relevant Accused Products released after the 2018 Notices would also infringe the identified patent families.

13.    Since the March 2018 expiration of the Freescale PLA, Defendant NXP's annual revenue and gross profits have increased significantly, driven primarily by growth in sales of the

Accused Products,[5] all while NXP has knowingly continued to exploit the patented technology without authorization or compensation to Plaintiff or its predecessor-in-interest.

14.    Defendant's infringement has been egregious. NXP had actual knowledge of the Asserted Patent families through the long-standing license between Rambus and Freescale (later NXP) and through the detailed infringement notices provided by Rambus in 2018. Despite that knowledge, NXP deliberately chose to continue practicing the patented technology without authorization. NXP's conduct constitutes willful infringement under 35 U.S.C. § 284.

15.    As explained herein, Defendant NXP's infringement of the Asserted Patents has, since as early as the March 2018 expiration of the Freescale PLA, and no later than the August 2018 Notice, or—in the case of later-issued Asserted Patents—the issue date of each Asserted Patent, been knowing, willful, and in conscious disregard of the patent rights in the Asserted Patents.

## THE PARTIES

16.    Plaintiff Signal is a limited liability partnership organized and existing under the laws of the State of Nevada with a registered address at 1468 James Rd., Gardnerville, NV 89460.

17.    Defendant NXP USA, Inc. is a corporation organized and existing under the laws of Delaware. Defendant NXP has places of business inside this Judicial District, including its US Corporate Headquarters located at 6501 W. William Cannon Dr., Austin TX 78735, and two wafer fabrication facilities where it manufactures infringing microcontrollers (MCUs) and microprocessors (MPUs).[6]

---

[5] *See, e.g.*, https://www.nxp.com/docs/en/supporting-information/NXP-CORPORATE-OVERVIEW.pdf; https://investors.nxp.com/financial-information/irol-sec

[6] *See, e.g.*, https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA

18.    Defendant NXP USA, Inc. is a wholly owned subsidiary of NXP Semiconductors N.V.[7]:



19.    Defendant NXP is the registered agent in the United States for at least its corporate parent, NXP Semiconductors N.V.[8]

20.    Four corporate affiliates of Defendant NXP—NXP Semiconductors N.V.; NXP B.V.; Freescale Semiconductor Holdings V, Inc.; and Freescale Semiconductor Holding LLC— have stipulated in recent patent litigation in this District that they do not make, use, offer to sell, or sell in the United States or import into the United States any products which include the Accused Products in this present Complaint.[9] In reliance on these previous stipulations by

---

[7] *See, e.g.*, https://www.nxp.com/company/about-nxp/investor-relations/investor-faqs:INVESTORS-FAQS

[8] *See, e.g.*, https://investors.nxp.com/node/23781/html

[9] *See, e.g.*, *HD Silicon Solutions LLC v. NXP Semiconductors N.V. et al.*, No. 1:25-cv-01320 (W.D. Tex. Oct. 30, 2025), Dkt. 19 (Stipulation of Dismissal); and *K.Mizra LLC v. NXP Semiconductors N.V. et al.*, No. 7:25-cv-00304 (W.D. Tex. Nov. 5, 2025), Dkt. 25 (Stipulation of Dismissal).

Defendant NXP's corporate affiliates, and in the interest of efficient use of this Court's limited resources, Plaintiff Signal has brought this Complaint against Defendant NXP USA, Inc. alone.

21. Defendant NXP is engaged in making, using, selling, offering for sale, and/or importing products, such as semiconductors, integrated circuits, MCUs, MPUs, and SoCs, to and throughout the United States, including in this District. Defendant NXP also induces its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, and customers in the making, using, selling, offering for sale, and/or importing such products to and throughout the United States, including this District. To this end, Defendant NXP and its foreign and U.S.-based corporate affiliates—which act together as part of Defendant NXP's global network of sales and manufacturing emissaries—have operated as agents of and for one another and have otherwise acted vicariously for Defendant NXP as elements of the same business group and/or enterprise. Indeed, they work in concert and in orchestrated fashion, subject to agreements that are far nearer than arm's length, in order to implement a distribution channel of infringing products within this District and the United States.

22. Defendant NXP maintains a substantial corporate presence in the United States via at least its U.S. Corporate Headquarters in this District.[10]

23. Defendant NXP conducts business in the United States and this District, including importing, distributing, and selling semiconductors, integrated circuits, MCUs, MPUs, and SoCs that incorporate devices, systems, and processes that infringe the Asserted Patents.

24. Through importation, offers to sell, sales, distributions, and related agreements to transfer ownership of Defendant NXP's products (*e.g.*, semiconductors, integrated circuits, MCUs, MPUs, and SoCs) with distributors and customers operating in and maintaining

---

[10] *See, e.g.*, https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA

significant business presences in the United States, NXP conducts extensive business in the United States, this State, and this District.

<strong><u>JURISDICTION AND VENUE</u></strong>

25.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285. This Court has jurisdiction over this action pursuant to at least 28 U.S.C. § 1331 (Federal Question).

26.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1400(b). Defendant has committed acts of infringement in this District, and/or has induced others to commit acts of patent infringement in this District. Defendant has a regular and established place of business within this District, including its U.S. Corporate Headquarters located at 6501 W. William Cannon Dr., Austin, TX 78735, and on information and belief, facilities manufacturing the Accused Products located at 3501 Ed Bluestein Blvd., Austin, TX 78721.

27.     This Court has general and specific personal jurisdiction over the Defendant pursuant to due process and/or the Texas Long Arm Statute because, inter alia, (i) the Defendant has done and continues to do business in Texas and/or (ii) the Defendant has, directly and through intermediaries, affiliates, distributors, agents, and/or others committed and continues to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Products in Texas, and/or importing Accused Products into Texas, including by Internet sales (including acts of infringement via NXP.com's highly interactive website) and/or sales via retail and wholesale stores, inducing others to commit acts of patent infringement in Texas (including inducement via NXP.com's highly interactive website), and/or committing at least a portion of any other infringements alleged herein. Defendant has placed, and is continuing to place, infringing products into the stream of commerce, via established

distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendant has derived substantial revenues from its infringing acts occurring within Texas and within this District. Defendant has substantial business in this State and District, including: (A) conducting at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and/or imported, and services provided to Texas residents vicariously through and/or in concert with its respective alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

28.     This Court has personal jurisdiction over Defendant NXP, directly or through intermediaries, distributors, importers, customers, subsidiaries, and/or consumers including its U.S.-based sales subsidiaries, as applicable. Through direction and control (including, as relevant, in the past) of such subsidiaries, affiliates, distributors, retail partners, agents, and/or customers, Defendant has committed acts of direct and/or indirect patent infringement within Texas, and elsewhere within the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Upon information and belief, Defendant compensates its U.S.-based subsidiaries and/or agents for its sales support services in the United States. As such, Defendant has a direct financial interest in its U.S.-based subsidiaries and/or agents, and vice versa.

29.     On information and belief, Defendant NXP (directly and/or through its subsidiaries, affiliates, or intermediaries) owns, operates, or controls facilities that include offices and fabrication facilities in Austin, Texas where infringing products are designed, developed,

manufactured, tested, used, marketed, imported, exported, offered for sale, and/or sold into a stream of commerce that includes this District.[11]

30.     On information and belief, NXP employs numerous employees in Austin, TX who possess information relevant to issues involving the Accused Products, including at least: (1) Executive VP and CFO, who possesses knowledge related to the revenue of the Accused Products; (2) Senior VP and Chief IP Officer, who possesses knowledge relevant to damages and the hypothetical negotiation; (3) Senior Director and Head of IP Monetization, who has submitted patents relevant to the Accused Products and possesses knowledge relevant to damages; (4) Executive VP, General Counsel, Corporate Secretary, and Chief Sustainability Officer, who would possess information relevant to damages and reasonable royalty analysis; (5) Executive VP, Global Operations, who is responsible for overseeing NXP's manufacturing operations and would have relevant knowledge on the manufacturing of the Accused Products; (6) NXP's global head of sales, who possesses relevant knowledge of the sales and marketing of the Accused Products; (7) Technical Director, who works on the Accused Products; and various other individuals with responsibilities for the Accused Products, such as NXP's i.MX 8M Applications Processors.[12]

31.     In addition, Defendant NXP has knowingly induced, and continues to knowingly induce, infringement within this District by advertising, marketing, offering for sale and/or selling Accused Products (such as semiconductors, integrated circuits, MCUs, MPUs, and SoCs) that incorporate the fundamental technologies covered by the Asserted Patents. Such advertising, marketing, offering for sale and/or selling of Accused Products is directed to manufacturers,

---

[11] *See, e.g.*, https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA
[12] *See*, *e.g.*, *MIMO RESEARCH, LLC v. NXP USA, Inc.*, No. W:22-CV-00501-ADA (W.D. Tex. Apr. 20, 2023), Dkt. 71 at pp. 9-10.

integrators, suppliers, distributors, resellers, partners, consumers, customers, and/or end users, and this includes providing instructions, user manuals, advertising, and/or marketing materials facilitating, directing and encouraging use of infringing functionality with Defendant NXP's knowledge thereof.

32.     Defendant NXP has, thus, in the multitude of ways described above, availed itself of the benefits and privileges of conducting business in this State and willingly subjected itself to the exercise of this Court's personal jurisdiction. Indeed, Defendant NXP has sufficient minimum contacts with this forum through its transaction of substantial business in this State and this District and its commission of acts of patent infringement as alleged in this Complaint that are purposefully directed towards this State and District.

## THE ASSERTED PATENTS

33.     Plaintiff Signal owns the entire right, title, and interest in and to each of the Asserted Patents, including the right to recover damages for past, present, and future infringement of the Asserted Patents.

34.     Each of the Asserted Patents was duly and legally issued by the United States Patent and Trademark Office after full and fair examination. The Asserted Patents are valid and enforceable.

35.     The '400 Patent is titled "On-die termination control" and was lawfully issued on March 9, 2021, as U.S. Patent No. 10,944,400, stemming from U.S. Patent Application 16/853,658, which was filed on April 30, 2020. A true and correct copy of the '400 Patent is available at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10944400.

36.     The '962 Patent is titled "On-die termination of address and command signals" and was lawfully issued on February 3, 2015, as U.S. Patent No. 8,947,962, stemming from U.S.

Patent Application 14/088,277, which was filed on November 22, 2013. A true and correct copy of the '962 Patent is available at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8947962.

37.     The '637 Patent is titled "Memory controller with staggered request signal output" and was lawfully issued on January 28, 2014, as U.S. Patent No. 8,638,637, stemming from U.S. Patent Application 13/720,720, which was filed on December 19, 2012. A true and correct copy of the '637 Patent is available at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8638637.

38.     The '902 Patent is titled "On-die termination control" and was lawfully issued on August 21, 2018, as U.S. Patent No. 10,056,902, stemming from U.S. Patent Application 15/581,480, which was filed on April 28, 2017. A true and correct copy of the '902 Patent is available at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10056902.

39.     The '129 Patent is titled "On-die termination of address and command signals" and was lawfully issued on February 14, 2017, as U.S. Patent No. 9,570,129, stemming from U.S. Patent Application 15/081,745, which was filed on March 25, 2016. A true and correct copy of the '129 Patent is available at https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9570129.

40.     To the extent necessary, Plaintiff Signal complied with the requirements of 35 U.S.C. § 287, such that it may recover pre-suit damages. On information and belief, Signal's predecessor-in-interest, Rambus, also complied with the requirements of 35 U.S.C. § 287, such that Signal may recover pre-suit damages. On information and belief, Defendant NXP was notified of its infringement of the Asserted Patents and/or the patent families containing the

Asserted Patents in writing no later than on or about May 22, 2018. Defendant NXP continues to infringe to the present day.

<u>**THE ACCUSED PRODUCTS**</u>

41.    Defendant manufactures, uses, sells, offers for sale, and/or imports various products that incorporate memory controller integrated circuits supporting one or more double data rate ("DDR") memory standards (the "Accused Products"). For clarity and efficiency, the Accused Products are listed in sub-categories based on the particular DDR memory module type(s) (*e.g.*, LPDDR4) supported by each Accused Product, as defined by each Accused Product's listed specifications, and as further described below.

42.    The Accused Products for each Asserted Patent (*e.g.*, the "'129 Accused Products") include all or a subset of the Accused Products, as defined in each Asserted Patent's respective Exhibit(s).

43.    The textual description used to identify each NXP Accused Product (*e.g.*, "i.MX 93") refers to a product family, and includes all past, present, and future versions, and all variations and sub-categories thereof, including any NXP products incorporating the Accused Products, such as development kits.

44.    The Accused Products include, but are not limited to, the following NXP products[13]:

| NXP Accused Products | | | | | |
|---|---|---|---|---|---|
| **DDR3 Accused Products** | | | | | |
| B4420 | i.MX 6ULZ | LS1022A | MSC8252 | P4040 | T1024 |
| B4860 | i.MX 7 | LS1023A | MSC8254 | P4080/81 | T1040 |
| BSC9131 | i.MX 7Dual | LS1024A | MSC8256 | P5010 | T1042 |

---

[13] An Accused Product may appear in more than one sub-category based on its stated compatibility with multiple DDR memory standards.

| BSC9132 | i.MX 7Solo | LS1028A | P1010 | P5020 | T2080 |
|---|---|---|---|---|---|
| C29x (291, 292, 293) | i.MX 8M | LS1043A | P1012 | P5021 | T2081 |
| i.MX 53x (4/5/6/7) | i.MX 8M Dual | MPC8535E | P1014 | P5040 | T4080 |
| i.MX 6Dual | i.MX 8M Mini | MPC8536E | P1015 | S32G2 | T4081 |
| i.MX 6DualLite | i.MX 8M MiniLite | MPC8569E | P1020/11 | S32G3 | T4160 |
| i.MX 6DualPlus | i.MX 8M Nano | MPC8572 | P1021 | S32R43 | T4161 |
| i.MX 6Quad | i.MX 8M Quad | MSC8151 | P1022/13 | S32R45 | T4240 |
| i.MX 6QuadPlus | i.MX 8M QuadLite | MSC8152 | P1024 | S32V | T4241 |
| i.MX 6Solo | i.MX 8X | MSC8154 | P1025/16 | T1013 | VF3xx Family |
| i.MX 6SoloLite | i.MX 8XLite | MSC8154E | P2020/10 | T1014 | VF5xx Family |
| i.MX 6SoloX | LS1012A | MSC8156 | P2040 | T1020 | VF6xx Family |
| i.MX 6ULL | LS1020A | MSC8156E | P2041 | T1022 | |
| i.MX 6UltraLite | LS1021A | MSC8251 | P3041 | T1023 | |
| **DDR3L Accused Products** | | | | | |
| B4420 | i.MX 6SoloLite | i.MX 8M MiniLite | LS1043A | S32R43 | T2080 |
| B4860 | i.MX 6SoloX | i.MX 8M Nano | LS1012A | S32R45 | T2081 |
| BSC9131 | i.MX 6ULL | i.MX 8M Quad | P1010 | S32V | T4080 |
| BSC9132 | i.MX 6UltraLite | i.MX 8M QuadLite | P1014 | T1013 | T4081 |
| C29x (291, 292, 293) | i.MX 6ULZ | i.MX 8X | P2040 | T1014 | T4160 |
| i.MX 6Dual | i.MX 7 | i.MX 8XLite | P2041 | T1020 | T4161 |
| i.MX 6DualLite | i.MX 7Dual | LS1020A | P3041 | T1022 | T4240 |
| i.MX 6DualPlus | i.MX 7Solo | LS1021A | P5021 | T1023 | T4241 |
| i.MX 6Quad | i.MX 8M | LS1022A | P5040 | T1024 | |
| i.MX 6QuadPlus | i.MX 8M Dual | LS1023A | S32G2 | T1040 | |

| | | | | | |
|---|---|---|---|---|---|
| i.MX 6Solo | i.MX 8M Mini | LS1028A | S32G3 | T1042 | |
| **DDR4 Accused Products** | | | | | |
| i.MX 8 | i.MX 8M Quad | LS1023A | LS2044A | LX2082A | T1020 |
| i.MX 8M | i.MX 8M QuadLite | LS1026A | LS2045A | LX2120A | T1022 |
| i.MX 8M Dual | i.MX 8Quad | LS1028A | LS2048A | LX2122A | T1023 |
| i.MX 8M Mini | LA1575 | LS1043A | LS2084A | LX2160A | T1024 |
| i.MX 8M MiniLite | LS1020A | LS1046A | LS2085A | LX2162A | T1040 |
| i.MX 8M Nano | LS1021A | LS1048A | LS2088A | T1013 | T1042 |
| i.MX 8M Plus | LS1022A | LS1088A | LX2080A | T1014 | |
| **LPDDR4 Accused Products** | | | | | |
| ARA-1 | i.MX 8M Mini | i.MX 8Quad | i.MX 91 | S32G2 | S32Z |
| ARA-2 | i.MX 8M MiniLite | i.MX 8QuadMax | i.MX 93 | S32G3 | |
| ARA240 | i.MX 8M Nano | i.MX 8QuadPlus | i.MX 94/943 | S32N55 | |
| i.MX 8 | i.MX 8M Plus | i.MX 8ULP | i.MX 95 | S32R43 | |
| i.MX 8M | i.MX 8M Quad | i.MX 8X | i.MX 952 | S32R45 | |
| i.MX 8M Dual | i.MX 8M QuadLite | i.MX 8XLite | S32E | S32R47 | |
| **LPDDR4X Accused Products** | | | | | |
| ARA-2 | i.MX 8ULP | i.MX 93 | i.MX 95 | i.MX 952 | S32N55 |
| S32R47 | | | | | |
| **LPDDR5/5X Accused Products** | | | | | |
| i.MX 94/943 | i.MX 95 | i.MX 952 | S32N55 | S32N7 | S32R47 |

45.     The Accused Products identified above are exemplary. Discovery is expected to reveal additional products and product variants that incorporate the same or materially similar infringing memory controller functionality. Plaintiff reserves the right to identify additional accused products as discovery proceeds.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,944,400

46.    Plaintiff Signal realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

47.    Signal owns all rights, title, and interest in the '400 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

48.    Defendant NXP has directly infringed, and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '400 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import. On information and belief, and as further set forth in **Exhibit 1** to this Complaint, which is incorporated here by reference, Defendant makes, uses, offers for sale, sells, and/or imports certain products (the "'400 Accused Products") that directly infringe each and every limitation of at least Claim 1 of the '400 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

49.    Defendant NXP has directly infringed and continues to directly infringe, either by itself or via its agent(s) or affiliate(s), at least as illustrated in **Exhibit 1** to this Complaint under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the '400 Accused Products. Furthermore, insofar as Defendant NXP makes and sells the '400 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivers the '400 Accused Products outside of the United States, it does so intending and/or knowing that those products are destined

for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '400 Patent.[14]

*Indirect Infringement (35 U.S.C. § 271(b))*

50.     In addition and/or in the alternative to its direct infringement, Defendant NXP has indirectly infringed and continues to indirectly infringe one or more claims of the '400 Patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '400 Accused Products.

51.     At a minimum, NXP has had knowledge of the '400 Patent since being served with this Complaint. Further, since at least the May 22, 2018 Notice, Defendant NXP has had knowledge of the patent family containing the '400 Patent, including the direct parents of the '400 Patent. Since receiving notice of its infringement, Defendant NXP has actively induced the direct infringement of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '400 Patent. Indeed, Defendant NXP has intended to cause, continues to intend to cause, and has taken, and continues to take affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '400 Accused Products[15]; creating and/or maintaining established distribution channels for the '400 Accused Products into and

---

[14] *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

[15] *See, e.g.*, https://www.nxp.com/products/i.MX8M

within the United States[16]; manufacturing the '400 Accused Products in conformity with U.S. laws and regulations; distributing or making available videos, training, tools and resources supporting use of the '400 Accused Products that promote its features, specifications, and applications[17]; providing technical documentation and tools for the '400 Accused Products, including white papers, brochures, and manuals[18]; promoting the incorporation of the '400 Accused Products into end-user products through the development of Defendant NXP's partner programs[19]; and by providing technical support and/or related services for these products to purchasers in the United States through Defendant NXP's online support platforms including the "NXP Community" forum further explaining how to use Defendant NXP's products[20].

52.     The '400 Accused Products satisfy all claim limitations of at least Claim 1 of the '400 Patent. A claim chart comparing independent Claim 1 of the '400 Patent to Defendant's infringing activity is attached as **Exhibit 1**.

53.     By making, using, offering for sale, selling and/or importing into the United States the '400 Accused Products, Defendant has injured Signal and is liable for infringement of at least Claim 1 of the '400 Patent pursuant to 35 U.S.C. § 271.

*Damages*

54.     On information and belief, despite having knowledge of the '400 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '400 Patent, Defendant NXP has nevertheless continued its infringing conduct and disregarded an objectively

---

[16] *See, e.g.*, https://www.nxp.com/store:STORE; https://www.nxp.com/support/sample-and-buy/distributor-network:DISTRIBUTORS

[17] *See, e.g.*, https://www.nxp.com/design/design-center/training:TRAINING-EVENTS

[18] *See, e.g.*, https://www.nxp.com/design/design-center/documentation:DOCUMENTATION

[19] *See, e.g.*, https://www.nxp.com/company/about-nxp/smarter-world-videos/AP-PREMIUM-ENGINEERING-SERVICES-VID

[20] *See, e.g.*, https://community.nxp.com; https://www.nxp.com/support/support:SUPPORTHOME

high likelihood of infringement. Defendant NXP's infringing activities with respect to the '400 Patent have been, and continue to be, knowing, willful, deliberate, in conscious disregard of the patent rights of the Asserted Patents, and an egregious case of misconduct beyond typical infringement such that Signal is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed together with interest, costs, and attorneys' fees, to the extent permitted by law.

55.     As a result of Defendant's infringing conduct described in this Count, Signal is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with pre- and post-judgment interest and costs as fixed by the Court.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 8,947,962

56.     Plaintiff Signal realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

57.     Signal owns all rights, title, and interest in the '962 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

58.     Defendant NXP has directly infringed, and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '962 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import. On information and belief, and as further set forth in **Exhibit 2** to this Complaint, which is incorporated here by reference, Defendant makes, uses, offers for sale, sells, and/or imports certain products (the "'962 Accused Products") that directly infringe each and every limitation of at least Claim 1 of the '962 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

59.     Defendant NXP has directly infringed and continues to directly infringe, either by itself or via its agent(s) or affiliate(s), at least as illustrated in **Exhibit 2** to this Complaint under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the '962 Accused Products. Furthermore, insofar as Defendant NXP makes and sells the '962 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivers the '962 Accused Products outside of the United States, it does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '962 Patent.[21]

*Indirect Infringement (35 U.S.C. § 271(b))*

60.     In addition and/or in the alternative to its direct infringement, Defendant NXP has indirectly infringed and continues to indirectly infringe one or more claims of the '962 Patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '962 Accused Products.

61.     At a minimum, NXP has had knowledge of the '962 Patent since being served with this Complaint. Further, since at least the May 22, 2018 Notice, Defendant NXP has had direct knowledge of the '962 Patent and its patent family members. Since receiving notice of its infringement, Defendant NXP has actively induced the direct infringement of its subsidiaries,

---

[21] *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '962 Patent. Indeed, Defendant NXP has intended to cause, continues to intend to cause, and has taken, and continues to take affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '962 Accused Products[22]; creating and/or maintaining established distribution channels for the '962 Accused Products into and within the United States[23]; manufacturing the '962 Accused Products in conformity with U.S. laws and regulations; distributing or making available videos, training, tools and resources supporting use of the '962 Accused Products that promote its features, specifications, and applications[24]; providing technical documentation and tools for the '962 Accused Products, including white papers, brochures, and manuals[25]; promoting the incorporation of the '962 Accused Products into end-user products through the development of Defendant NXP's partner programs[26]; and by providing technical support and/or related services for these products to purchasers in the United States through Defendant NXP's online support platforms including the "NXP Community" forum further explaining how to use Defendant NXP's products[27].

---

[22] *See, e.g.*, https://www.nxp.com/products/i.MX8M

[23] *See, e.g.*, https://www.nxp.com/store:STORE; https://www.nxp.com/support/sample-and-buy/distributor-network:DISTRIBUTORS

[24] *See, e.g.*, https://www.nxp.com/design/design-center/training:TRAINING-EVENTS

[25] *See, e.g.*, https://www.nxp.com/design/design-center/documentation:DOCUMENTATION

[26] *See, e.g.*, https://www.nxp.com/company/about-nxp/smarter-world-videos/AP-PREMIUM-ENGINEERING-SERVICES-VID

[27] *See, e.g.*, https://community.nxp.com; https://www.nxp.com/support/support:SUPPORTHOME

62.     The '962 Accused Products satisfy all claim limitations of at least Claim 1 of the '962 Patent. A claim chart comparing independent Claim 1 of the '962 Patent to Defendant's infringing activity is attached as **Exhibit 2**.

63.     By making, using, offering for sale, selling and/or importing into the United States the '962 Accused Products, Defendant has injured Signal and is liable for infringement of at least Claim 1 of the '962 Patent pursuant to 35 U.S.C. § 271.

*Damages*

64.     On information and belief, despite having knowledge of the '962 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '962 Patent, Defendant NXP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant NXP's infringing activities with respect to the '962 Patent have been, and continue to be, knowing, willful, deliberate, in conscious disregard of the patent rights of the Asserted Patents, and an egregious case of misconduct beyond typical infringement such that Signal is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed together with interest, costs, and attorneys' fees, to the extent permitted by law.

65.     As a result of Defendant's infringing conduct described in this Count, Signal is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with pre- and post-judgment interest and costs as fixed by the Court.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 8,638,637

66.     Plaintiff Signal realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

67.    Signal owns all rights, title, and interest in the '637 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

68.    Defendant NXP has directly infringed, and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '637 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import. On information and belief, and as further set forth in **Exhibit 3** to this Complaint, which is incorporated here by reference, Defendant makes, uses, offers for sale, sells, and/or imports certain products (the "'637 Accused Products") that directly infringe each and every limitation of at least Claim 1 of the '637 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

69.    Defendant NXP has directly infringed and continues to directly infringe, either by itself or via its agent(s) or affiliate(s), at least as illustrated in **Exhibit 3** to this Complaint under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the '637 Accused Products. Furthermore, insofar as Defendant NXP makes and sells the '637 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivers the '637 Accused Products outside of the United States, it does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '637 Patent.[28]

---

[28] *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

*Indirect Infringement (35 U.S.C. § 271(b))*

70.     In addition and/or in the alternative to its direct infringement, Defendant NXP has indirectly infringed and continues to indirectly infringe one or more claims of the '637 Patent by knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '637 Accused Products.

71.     Since at least the May 22, 2018 Notice, Defendant NXP has had direct knowledge of the '637 Patent and its patent family members. Since receiving notice of its infringement, Defendant NXP has actively induced the direct infringement of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '637 Patent. Indeed, Defendant NXP has intended to cause, continues to intend to cause, and has taken, and continues to take affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '637 Accused Products[29]; creating and/or maintaining established distribution channels for the '637 Accused Products into and within the United States[30]; manufacturing the '637 Accused Products in conformity with U.S. laws and regulations; distributing or making available videos, training, tools and resources supporting use of the '637 Accused Products that promote its

---

[29] *See, e.g.*, https://www.nxp.com/products/i.MX8M
[30] *See, e.g.*, https://www.nxp.com/store:STORE; https://www.nxp.com/support/sample-and-buy/distributor-network:DISTRIBUTORS

- 23 -

features, specifications, and applications[31]; providing technical documentation and tools for the

'637 Accused Products, including white papers, brochures, and manuals[32]; promoting the

incorporation of the '637 Accused Products into end-user products through the development of

Defendant NXP's partner programs[33]; and by providing technical support and/or related services

for these products to purchasers in the United States through Defendant NXP's online support

platforms including the "NXP Community" forum further explaining how to use Defendant

NXP's products[34].

72.     The '637 Accused Products satisfy all claim limitations of at least Claim 1 of the

'637 Patent. A claim chart comparing independent Claim 1 of the '637 Patent to Defendant's

infringing activity is attached as **Exhibit 3**.

73.     By making, using, offering for sale, selling and/or importing into the United

States the '637 Accused Products, Defendant has injured Signal and is liable for infringement of

at least Claim 1 of the '637 Patent pursuant to 35 U.S.C. § 271.

*Damages*

74.     On information and belief, despite having knowledge of the '637 Patent and

knowledge that it is directly and/or indirectly infringing one or more claims of the '637 Patent,

Defendant NXP has nevertheless continued its infringing conduct and disregarded an objectively

high likelihood of infringement. Defendant NXP's infringing activities with respect to the '637

Patent have been, and continue to be, knowing, willful, deliberate, in conscious disregard of the

patent rights of the Asserted Patents, and an egregious case of misconduct beyond typical

---

[31] *See, e.g.*, https://www.nxp.com/design/design-center/training:TRAINING-EVENTS
[32] *See, e.g.*, https://www.nxp.com/design/design-center/documentation:DOCUMENTATION
[33] *See, e.g.*, https://www.nxp.com/company/about-nxp/smarter-world-videos/AP-PREMIUM-ENGINEERING-SERVICES-VID
[34] *See, e.g.*, https://community.nxp.com; https://www.nxp.com/support/support:SUPPORTHOME

infringement such that Signal is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed together with interest, costs, and attorneys' fees, to the extent permitted by law.

75.    As a result of Defendant's infringing conduct described in this Count, Signal is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with pre- and post-judgment interest and costs as fixed by the Court.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,056,902

76.    Plaintiff Signal realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

77.    Signal owns all rights, title, and interest in the '902 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

78.    Defendant NXP has directly infringed, and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '902 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import. On information and belief, and as further set forth in **Exhibit 4** to this Complaint, which is incorporated here by reference, Defendant makes, uses, offers for sale, sells, and/or imports certain products (the "'902 Accused Products") that directly infringe each and every limitation of at least Claim 1 of the '902 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

79.    Defendant NXP has directly infringed and continues to directly infringe, either by itself or via its agent(s) or affiliate(s), at least as illustrated in **Exhibit 4** to this Complaint under

35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the '902 Accused

Products. Furthermore, insofar as Defendant NXP makes and sells the '902 Accused Products

outside of the United States and either delivers those products to its customers, distributors,

and/or subsidiaries in the United States, or, in the case that it delivers the '902 Accused Products

outside of the United States, it does so intending and/or knowing that those products are destined

for the United States and/or designed and designated for sale in the United States, thereby

directly infringing the '902 Patent.[35]

*Indirect Infringement (35 U.S.C. § 271(b))*

80.    In addition and/or in the alternative to its direct infringement, Defendant NXP has

indirectly infringed and continues to indirectly infringe one or more claims of the '902 Patent by

knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates,

retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by

making, using, offering to sell, selling and/or importing into the United States the '902 Accused

Products.

81.    At a minimum, NXP has had knowledge of the '902 Patent since being served

with this Complaint. Further, since at least the May 22, 2018 Notice, Defendant NXP has had

knowledge of the patent family containing the '902 Patent, including the direct parents of the

'902 Patent. Since receiving notice of its infringement, Defendant NXP has actively induced the

direct infringement of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators,

importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements

have been committed with the knowledge, or with willful blindness to the fact, that the acts

---

[35] *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F.
Supp. 2d 653, 658 (E.D. Tex. 2013).

induced constitute infringement of the '902 Patent. Indeed, Defendant NXP has intended to cause, continues to intend to cause, and has taken, and continues to take affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '902 Accused Products[36]; creating and/or maintaining established distribution channels for the '902 Accused Products into and within the United States[37]; manufacturing the '902 Accused Products in conformity with U.S. laws and regulations; distributing or making available videos, training, tools and resources supporting use of the '902 Accused Products that promote its features, specifications, and applications[38]; providing technical documentation and tools for the '902 Accused Products, including white papers, brochures, and manuals[39]; promoting the incorporation of the '902 Accused Products into end-user products through the development of Defendant NXP's partner programs[40]; and by providing technical support and/or related services for these products to purchasers in the United States through Defendant NXP's online support platforms including the "NXP Community" forum further explaining how to use Defendant NXP's products[41].

82.     The '902 Accused Products satisfy all claim limitations of at least Claim 1 of the '902 Patent. A claim chart comparing independent Claim 1 of the '902 Patent to Defendant's infringing activity is attached as **Exhibit 4**.

---

[36] *See, e.g.*, https://www.nxp.com/products/i.MX8M

[37] *See, e.g.*, https://www.nxp.com/store:STORE; https://www.nxp.com/support/sample-and-buy/distributor-network:DISTRIBUTORS

[38] *See, e.g.*, https://www.nxp.com/design/design-center/training:TRAINING-EVENTS

[39] *See, e.g.*, https://www.nxp.com/design/design-center/documentation:DOCUMENTATION

[40] *See, e.g.*, https://www.nxp.com/company/about-nxp/smarter-world-videos/AP-PREMIUM-ENGINEERING-SERVICES-VID

[41] *See, e.g.*, https://community.nxp.com; https://www.nxp.com/support/support:SUPPORTHOME

83.     By making, using, offering for sale, selling and/or importing into the United States the '902 Accused Products, Defendant has injured Signal and is liable for infringement of at least Claim 1 of the '902 Patent pursuant to 35 U.S.C. § 271.

*Damages*

84.     On information and belief, despite having knowledge of the '902 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '902 Patent, Defendant NXP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant NXP's infringing activities with respect to the '902 Patent have been, and continue to be, knowing, willful, deliberate, in conscious disregard of the patent rights of the Asserted Patents, and an egregious case of misconduct beyond typical infringement such that Signal is entitled to enhanced damages under 35 U.S.C. § 284 up to three times the amount found or assessed together with interest, costs, and attorneys' fees, to the extent permitted by law.

85.     As a result of Defendant's infringing conduct described in this Count, Signal is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with pre- and post-judgment interest and costs as fixed by the Court.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 9,570,129

86.     Plaintiff Signal realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

87.     Signal owns all rights, title, and interest in the '129 Patent including the right to exclude others and to enforce, sue, and recover damages for past and future infringements.

88.     Defendant NXP has directly infringed, and continues to directly and/or indirectly infringe (by inducing infringement) one or more claims of the '129 Patent in this District and elsewhere in Texas and the United States by making, using, selling, offering to sell, and/or importing, and by actively inducing others to make, use, sell, offer to sell, and/or import. On information and belief, and as further set forth in **Exhibit 5** to this Complaint, which is incorporated here by reference, Defendant makes, uses, offers for sale, sells, and/or imports certain products (the "'129 Accused Products") that directly infringe each and every limitation of at least Claim 1 of the '129 Patent.

*Direct Infringement (35 U.S.C. § 271(a))*

89.     Defendant NXP has directly infringed and continues to directly infringe, either by itself or via its agent(s) or affiliate(s), at least as illustrated in **Exhibit 5** to this Complaint under 35 U.S.C. § 271(a) by making, offering for sale, selling, and/or importing the '129 Accused Products. Furthermore, insofar as Defendant NXP makes and sells the '129 Accused Products outside of the United States and either delivers those products to its customers, distributors, and/or subsidiaries in the United States, or, in the case that it delivers the '129 Accused Products outside of the United States, it does so intending and/or knowing that those products are destined for the United States and/or designed and designated for sale in the United States, thereby directly infringing the '129 Patent.[42]

*Indirect Infringement (35 U.S.C. § 271(b))*

90.     In addition and/or in the alternative to its direct infringement, Defendant NXP has indirectly infringed and continues to indirectly infringe one or more claims of the '129 Patent by

---

[42] *See, e.g., Lake Cherokee Hard Drive Techs., L.L.C. v. Marvell Semiconductor, Inc.*, 964 F. Supp. 2d 653, 658 (E.D. Tex. 2013).

knowingly and intentionally inducing others, including its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers, to directly infringe by making, using, offering to sell, selling and/or importing into the United States the '129 Accused Products.

91.     At a minimum, NXP has had knowledge of the '129 Patent since being served with this Complaint. Further, since at least the May 22, 2018 Notice, Defendant NXP has had knowledge of the patent family containing the '129 Patent, including the '962 Patent (a direct parent of the '129 Patent), asserted in this Complaint. Since receiving notice of its infringement, Defendant NXP has actively induced the direct infringement of its subsidiaries, distributors, affiliates, retailers, suppliers, integrators, importers, customers, and/or consumers as set forth under U.S.C. § 271(b). Such inducements have been committed with the knowledge, or with willful blindness to the fact, that the acts induced constitute infringement of the '129 Patent. Indeed, Defendant NXP has intended to cause, continues to intend to cause, and has taken, and continues to take affirmative steps to induce infringement by, among other things, creating and disseminating advertisements and instructive materials that promote the infringing use of the '129 Accused Products[43]; creating and/or maintaining established distribution channels for the '129 Accused Products into and within the United States[44]; manufacturing the '129 Accused Products in conformity with U.S. laws and regulations; distributing or making available videos, training, tools and resources supporting use of the '129 Accused Products that promote its features, specifications, and applications[45]; providing technical documentation and tools for the

---

[43] *See, e.g.*, https://www.nxp.com/products/i.MX8M
[44] *See, e.g.*, https://www.nxp.com/store:STORE; https://www.nxp.com/support/sample-and-buy/distributor-network:DISTRIBUTORS
[45] *See, e.g.*, https://www.nxp.com/design/design-center/training:TRAINING-EVENTS

'129 Accused Products, including white papers, brochures, and manuals[46]; promoting the incorporation of the '129 Accused Products into end-user products through the development of Defendant NXP's partner programs[47]; and by providing technical support and/or related services for these products to purchasers in the United States through Defendant NXP's online support platforms including the "NXP Community" forum further explaining how to use Defendant NXP's products[48].

92.    The '129 Accused Products satisfy all claim limitations of at least Claim 1 of the '129 Patent. A claim chart comparing independent Claim 1 of the '129 Patent to Defendant's infringing activity is attached as **Exhibit 5**.

93.    By making, using, offering for sale, selling and/or importing into the United States the '129 Accused Products, Defendant has injured Signal and is liable for infringement of at least Claim 1 of the '129 Patent pursuant to 35 U.S.C. § 271.

*Damages*

94.    On information and belief, despite having knowledge of the '129 Patent and knowledge that it is directly and/or indirectly infringing one or more claims of the '129 Patent, Defendant NXP has nevertheless continued its infringing conduct and disregarded an objectively high likelihood of infringement. Defendant NXP's infringing activities with respect to the '129 Patent have been, and continue to be, knowing, willful, deliberate, in conscious disregard of the patent rights of the Asserted Patents, and an egregious case of misconduct beyond typical infringement such that Signal is entitled to enhanced damages under 35 U.S.C. § 284 up to three

---

[46] *See, e.g.*, https://www.nxp.com/design/design-center/documentation:DOCUMENTATION
[47] *See, e.g.*, https://www.nxp.com/company/about-nxp/smarter-world-videos/AP-PREMIUM-ENGINEERING-SERVICES-VID
[48] *See, e.g.*, https://community.nxp.com; https://www.nxp.com/support/support:SUPPORTHOME

times the amount found or assessed together with interest, costs, and attorneys' fees, to the extent permitted by law.

95.    As a result of Defendant's infringing conduct described in this Count, Signal is entitled to monetary damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with pre- and post-judgment interest and costs as fixed by the Court.

## DEMAND FOR JURY TRIAL

96.    Plaintiff Signal hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

97.    Plaintiff Signal respectfully requests that the Court find in its favor and against Defendant NXP, and that the Court grant Plaintiff the following relief:

a)  A judgment that Defendant NXP has infringed and is infringing one or more claims of the Asserted Patents, literally and/or under the doctrine of equivalents;

b)  A judgment that one or more claims of the Asserted Patents have been willfully infringed, literally and/or under the doctrine of equivalents, by Defendant;

c)  A judgment that Defendant account for and pay to Plaintiff all damages and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

d)  A judgment that Defendant account for and pay to Plaintiff a reasonable, ongoing, post-judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

e) A judgment that Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f) A judgment that this case is exceptional under the provisions of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees;

g) A judgment awarding Plaintiff damages adequate to compensate for Defendant's infringement of the Asserted Patents pursuant to 35 U.S.C. § 284, including but not limited to lost profits and/or a reasonable royalty;

h) A judgment awarding Plaintiff enhanced damages pursuant to 35 U.S.C. § 284 based on Defendant's willful infringement;

i) Such other and further relief as the Court deems just and equitable.

Dated: March 16, 2026

Respectfully submitted,

/s/ *Patrick J. Conroy*
Patrick J. Conroy
Texas Bar No. 24012448
Jonathan H. Rastegar
Texas Bar No. 24064043
NELSON BUMGARDNER CONROY PC
2727 N. Harwood St., Suite 250
Dallas, Texas 75201
Tel: (214) 446-4950
pat@nelbum.com
jon@nelbum.com

David A. Gerasimow
Texas Bar No. 24134024
Colin J. Stalter
Illinois Bar No. 6333401
(*pro hac vice* forthcoming)
THE LAW OFFICES OF DAVID A. GERASIMOW, P.C.
701 Commerce St., Suite 611
Dallas, Texas 75202
Tel: (312) 620-4442
dave@gerasimowlaw.com
colin@gerasimowlaw.com

Attorneys for Plaintiff
Signal, LLP